UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DANIEL A.,[1] | : | Case No. 3:21-cv-335 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Daniel A. brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #10), and the administrative record (Doc. #6).

**I.     Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits in August 2019, alleging disability due to several impairments, including five strokes and right shoulder surgery. (Doc. #6-6, *PageID* # 264). After Plaintiff's applications were denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Timothy J. Christensen. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] The ALJ reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since February 2, 2017, the alleged onset date.[3] |
| Step 2: | He has the following severe impairments: status post cerebrovascular accident (CVA) due to vertebral artery dissection, neurocognitive disorder, depressive disorder, and status post-surgery for right labral tear. |
| Step 3: | Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consist of "light work … except he has additional limitations. [Plaintiff] requires a sit/stand option but by exercising that option, he would be off-task less than ten percent of any given workday. He is capable of sitting, standing, and/or walking up to half an hour at a time. [Plaintiff] can never climb ladders, ropes, or scaffolds. He must avoid walking on uneven |

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.
[3] Plaintiff's applications were previously denied on May 17, 2019 by ALJ Robert Asbille. (Doc. #6, *PageID* #s 66-92). As a result, ALJ Christensen noted that, since Plaintiff's prior applications were administratively final, the issue of disability from the alleged onset date, February 2, 2017, through May 17, 2019, the date of ALJ Asbille's decision, were governed by the doctrine of res judicata." *Id*. at 29. Accordingly, ALJ Christensen's decision only addressed the issue of disability beginning May 18, 2019, the day after ALJ Asbille's decision. *Id*.

      surfaces. [Plaintiff] cannot perform overhead work with the right upper extremity. He cannot have exposure to unprotected heights or dangerous moving machinery. He is capable of understanding, remembering, and carrying out simple instructions. He is not able to do fast-paced tasks. He is capable of adapting to routine changes in the work environment."

      Plaintiff is unable to perform his past relevant work.

Step 5:  Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

(Doc. #6-2, *PageID* #s 32-44). Based on these findings, the ALJ concluded that Plaintiff has not been disabled since May 18, 2019. *Id.* at 44.

  The evidence of record is adequately summarized in the ALJ's decision (Doc. #6-2, *PageID* #s 32-44), Plaintiff's Statement of Errors (Doc. #9), and the Commissioner's Memorandum in Opposition (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

**II.** **Standard of Review**

  Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In his Statement of Errors, Plaintiff raises a single assignment of error, which is that the ALJ failed to consider essential vocational expert testimony in finding Plaintiff's ability to perform light work. (Doc. #9, *PageID* #813). Specifically, Plaintiff maintains that ALJ Christensen erred by inaccurately portraying his impairments to the vocational expert, unreasonably finding him capable of sustaining competitive, full-time light exertion work. (Doc. #9, *PageID #s* 813-17). The Commissioner maintains that substantial evidence supports the ALJ's decision. (Doc. #10, *PageID* #s 821-34).

During the hearing, ALJ Christensen posed a hypothetical to the vocational expert about the availability of jobs in the national economy for an individual with certain hypothetical limitations. (Doc. #6-2, *PageID* #61). In response to this hypothetical, the vocational expert was able to identify at least 73,000 jobs that would be available in the national economy for an individual with the specified limitations. *Id.* at 61-62. On examination by Plaintiff's counsel, the vocational expert was asked about additional hypothetical limitations, including whether there

4

would be any jobs eliminated if the hypothetical individual was unable to walk and/or stand for four hours throughout the day. *Id*. at 62. The vocational expert confirmed that all light work jobs would be eliminated, but that the individual could still perform sedentary jobs with a sit/stand option that amounted to approximately 22,000 jobs in the national economy. *Id*. at 63. Plaintiff's counsel then asked if there would be an impact on the hypothetical individual's ability to perform these sedentary jobs with a sit/stand option if he were required to use a cane for balance, to which the vocational expert indicated that all such jobs would be eliminated. *Id*. Finally, when asked about the tolerance for off-task behavior and absenteeism, the vocational expert indicated that, any off-task behavior exceeding fifteen percent would be work-preclusive. *Id*. Similarly, the vocational expert testified that an individual would not be able to maintain gainful employment if he were absent more than one day a month every month. *Id*.

In assessing Plaintiff's RFC, ALJ Christensen ultimately decided not to include any of the hypothetical limitations posed by Plaintiff's attorney. *See id*. at 37. Plaintiff contends that the failure to include these limitations in the RFC constitutes reversible error as he would have been found disabled had these limitations been included. (Doc. #9, *PageID* #s 813-17).

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis …." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (July 2, 1996). The ALJ is responsible for assessing an individual's RFC. 20 C.F.R. § 404.1520(a)(4). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- *i.e.*, opinions about what the individual can still do despite his or her impairment(s)

5

-- submitted by an individual's treating source or other acceptable medical sources." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted). Furthermore, in assessing a plaintiff's RFC, the ALJ is not required to incorporate every limitation included in the hypothetical questions posed to the vocational expert—rather, the ALJ need only incorporate the limitations he deems credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (internal citation omitted).

As noted previously, Plaintiff's challenges to the ALJ's decision stems from the omission of the limitations requiring Plaintiff to use a cane for balance, be off-task for fifteen percent or more of the workday, and be absent for more than one day a month. (Doc. #9, *PageID* #s 813-17). According to Plaintiff, the need for these limitations were well documented in the record and the ALJ's failure to include them was reversible error as the vocational expert testified at the hearing that the limitations of using a cane for balance would be work-preclusive and that an employer would not tolerate off-task behavior for more than fifteen percent of the workday or absenteeism exceeding one day a month. *Id*.

However, Plaintiff does not point to an opinion from a medical source that specifically opined that he would require a cane for balance, would be off task more than fifteen percent of the time, or be absent more than once a month. Instead, Plaintiff relies on generalities in his medical records to support his claim that his RFC should have included these work-preclusive restrictions. (Doc. #9, *PageID* #s 814-17). Specifically, Plaintiff points to his CVA diagnosis and the related

symptoms for his condition, including right-side weakness, bodily pain, weakness, trouble with balance, cognitive delay, confusion, and poor memory. *Id*. at 814. Noticeably absent from Plaintiff's argument is the fact that none of the records endorse the work-preclusive restrictions he believes should have been included in his RFC. Indeed, while the record confirms that Plaintiff has suffered a stroke and some right-sided weakness, there is no medical opinion of record stating that these impairments would cause Plaintiff to require a cane to balance, be off task for more than fifteen percent of the time, or regularly miss more than one day of work a month.

In addition to his treatment records, Plaintiff also relies on the opinions of the consultative examiner, Amita Oza, M.D.. (Doc. #9, *PageID* #s 814-15). Dr. Oza examined Plaintiff in November 2019 and described him as a 48 year-old right-handed man with a history of a stroke and related right-sided weakness. (Doc. #6-7, *PageID* #s 707-08). Plaintiff reported problems with balance short-term memory, depth perception, and instability. *Id*. at 707. He told Dr. Oza that he uses a cane and worries about falling, though he has not fallen. *Id*. Plaintiff also told Dr. Oza that his right side was weaker than his left side, but that he could still unbutton, zip and unzip, and hold a coffee mug. *Id*. On examination, Dr. Oza reported that Plaintiff was alert, oriented, and without a speech impairment. *Id*. at 707-08. Dr. Oza also reported that Plaintiff had strong bilateral grip strength, which was slightly weaker on the right side compared to the left, with no muscle spasm or atrophy. *Id*. at 708. On ambulation, Plaintiff presented unsteady and swung to the right. *Id*. With the exception of a slightly restricted range of motion at his lumbar spine and right shoulder, which he had injured six months prior, Plaintiff demonstrated a full range of motion. *Id.* As a result of this examination, Dr. Oza concluded that Plaintiff's "work-related activities appear[ed]

to be affected" due to his depth perception difficulties, problems with balance and short-term memory, and some right-sided weakness. *Id.*

ALJ Christensen, however, was not persuaded by Dr. Oza's opinion as it was "too vague to support a residual functional capacity." (Doc. #6-2, *PageID* #41). Here, the ALJ acknowledged that Dr. Oza personally examined Plaintiff but pointed out that his statements regarding Plaintiff's depth perception difficulties appeared to be based on Plaintiff's subjective complaints as his vision examinations were generally normal. *Id.* (citing Doc. #6-7, *PageID* #s 367, 370, 391). Further, ALJ Christensen found that any problems related to Plaintiff's depth perception, balance, and memory problems were accommodated in the RFC by postural, workplace hazard, and mental restrictions. *Id.*

Instead, the ALJ was reasonably persuaded by the opinions of the record-reviewing consultants, who found that Plaintiff was capable of performing light work, as they "supported their opinions with objective findings and clinical evidence[,]" *see* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical finding(s) will be."), and had opinions that were "consistent with the record as a whole, including evidence entered into the record at the hearing level." (Doc. #6-2, *PageID* #40). *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding(s) will be."). ALJ

8

Christensen also noted that the state agency physicians are "licensed professionals who are considered experts in the evaluation of disability" and who were also able to review most of Plaintiff's records, providing a comprehensive, longitudinal assessment of Plaintiff's level of functioning. *Id*. *See* 20 C.F.R. § 404.1513a(b)(1) ("[O]ur Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."). Further, contrary to Plaintiff's allegations, ALJ Christensen did not just rely on the prior findings by ALJ Asbille. Rather, to account for Plaintiff's history of a stroke, balance issues, and recent right labral tear surgery, ALJ Christensen restricted Plaintiff from performing any overhead work with his right upper extremity and added a sit/stand limitation that allowed him to be off-task up to ten percent of any given workday when the option was exercised. (Doc. #6-2, *PageID* #s 37-38).

Plaintiff's reliance on the opinion of Larry C. James, Ph.D. in support of his argument for a cane limitation is also misplaced. Dr. James performed a psychological examination of Plaintiff in October 2019 and concluded that he had persistent depressive disorder. (Doc. #6-7, *PageID* #s 698-705). In doing so, Dr. James did, in fact, observe that Plaintiff "walked slowly with a cane for extra support." *Id*. at 701. However, Dr. James did not offer any physical functional limitations for which the ALJ could have incorporated in Plaintiff's RFC. Instead, Dr. James only provided limitations related to Plaintiff's mental functioning, which ALJ Christensen found persuasive and incorporated into Plaintiff's RFC. (Doc. #6-2, *PageID* #s 39-42).

Indeed, Plaintiff has not carried his burden in demonstrating through clinical evidence that a cane is medically necessary. *See Krieger v. Comm'r of Soc. Sec*., No. 2:18-cv-876, 2019 WL

1146356, at *4 (S.D. Ohio Mar. 13, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:18-CV-876, 2019 WL 3955407 (S.D. Ohio Aug. 22, 2019) (Morrison, D.J.). "[W]here there is conflicting evidence concerning the need for the cane, it is the ALJ's task and not the Court's, to resolve conflicts in the evidence." *McDonald v. Comm'r of Soc. Sec.,* No. 2:18-CV-622, 2019 WL 2170680, at *4 (S.D. Ohio May 20, 2019), *report and recommendation adopted,* No. 2:18-CV-622, 2019 WL 3944691 (S.D. Ohio Aug. 21, 2019) (Smith, D.J.) (quoting *Bowen v. Comm'r of Soc. Sec.*, No. 17-17, 2018 WL 328964, at *3 (S.D. Ohio Jan. 9, 2018) (Newman, M.J.). This is precisely what ALJ Christensen did. He reviewed the evidence and acknowledged that clinicians documenting that Plaintiff "sometimes walked with an ataxic gait and used a cane during evaluations," but pointed out that there was "nothing in the medical evidence of record indicat[ing] this cane was medically prescribed." (Doc. #6-2, *PageID* #35) (citing Doc. #6-7, *PageID* #s 355, 401, 403). ALJ Christensen further noted that Plaintiff was "often noted to walk with a normal gait." *Id*. at 40 (citing Doc. #6-7, *PageID* #s 355, 378, 396, 401, 403, 410, 428). Finally, the ALJ found that Plaintiff's own testimony regarding his "wide range of demanding activities of daily living" was inconsistent with his allegations regarding the necessity of a cane. *Id*. at 38 (citing Doc. #6-2, *PageID* #s 50-,64; Doc. #6-6, *PageID* #s 278, 315). As a result, ALJ Christensen reasonably determined that a cane restriction was not warranted in Plaintiff's RFC and, instead, included a limitation that provided a sit/stand option that would allow Plaintiff to be off task less than ten percent of any given workday when exercised. *Id*. at 37.

In sum, the ALJ reasonably evaluated the medical evidence related to Plaintiff's impairments and substantial evidence supports his RFC. Plaintiff has not shown that the ALJ erred

10

by failing to include the additional cane, off-task behavior, or absenteeism allowance limitations in the RFC.  For these reasons, Plaintiff's statement of errors is not well taken.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. #9) is **DENIED;**

2. The Commissioner's non-disability determination be **AFFIRMED**; and

3. The case be terminated on the docket of this Court.

January 5, 2023

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge